IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| NESSA WILLIAMS, *et al.* | : | |
| Plaintiffs, | : | 2:18-cv-03106-GJP |
| v. | : | |
| | : | |
| BETHANNA, | : | |
| Defendant | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNOPPOSED MOTION FOR APPROVAL OF THE SETTLEMENT**

This Fair Labor Standards Act ("FLSA") lawsuit has been settled for a total payment of $50,000 to be divided between the four Plaintiffs – Jamilla Blocker, Tijuana Harris, Amanda Mosley, and Nessa Williams – and their lawyers. Plaintiffs have moved for judicial approval of the settlement, see Doc. 15, and provided the Court with a copy of the "Settlement Agreement and Release" ("Agreement"), see Doc. 15-1. Plaintiffs submit the following legal arguments in further support of the motion:

**A. Factual Background.**

Ms. Williams started this lawsuit in July 2018 as a hybrid class/collective action seeking unpaid overtime pay under the FLSA and the Pennsylvania Minimum Wage Act ("PMWA"). See Doc. 1. Soon thereafter, Ms. Blocker, Ms. Harris, and Ms. Mosley joined the lawsuit pursuant to 29 U.S.C. § 216(b). See Doc. 5.

The City of Philadelphia has privatized many of the services associated with its foster care program. Under the current system, the City "manage[s] the private organizations (Community Umbrella Agencies) that provide case management and other support services in 10 geographic regions throughout Philadelphia." https://beta.phila.gov/departments/department-of-human-services/  Defendant is a

1

non-profit organization that provides such foster care services.  See Answer (Doc. 6) at ¶ 8.

Plaintiffs were employed by Defendant as Case Managers and paid a salary.  See Complaint (Doc. 1) at ¶¶ 12, 16; Answer (Doc. 6) at ¶ 16.  The Case Manager position requires a bachelor's degree in fields "including but not limited to sociology, psychology, counseling, criminal justice, education, divinity, or public health administration." Complaint at ¶ 14; accord Answer at ¶ 14.  Plaintiffs' post-secondary educational degrees are listed below:

| Jamilla Blocker | Bachelors in Criminal Justice |
| Tijuana Harris | Bachelors in Criminology;  Masters in Education |
| Amanda Mosley | Bachelors in Psychology |
| Nessa Williams | Bachelors in Elementary Education |

Plaintiffs claim they often worked over 40 hours per week.  See Complaint (Doc. 1) at ¶ 17.  On such occasions, Plaintiffs were not paid overtime premium compensation under the FLSA or PMWA.  See Complaint (Doc. 1) at ¶ 18.  That's because Defendant classified them as "exempt" from those statutes' overtime pay provisions.  See Answer (Doc. 6) ¶¶ 18, 28, 32.

**B. Class/Collective Litigation is Not Viable Due to Defendant's Financial Condition.**

During the November 9, 2018 case management conference, defense counsel represented to the Court that (i) Defendant is not financially viable and could never satisfy a judgment if this lawsuit were to be resolved on a classwide or collective basis and (ii) that this lawsuit is not covered by any insurance policy.  The undersigned's investigation confirms the accuracy of defense counsel's representations.  See, e.g., Defendant's IRS 990 Form for the Fiscal Year Ending June 30, 2017 (attached as

2

Appendix 1 and showing negative net revenues and negative assets). Accordingly, Plaintiffs and their undersigned counsel all agree that pursuing this matter on a collective or classwide basis would be futile.

**C. Litigation Risks.**

Absent settlement, the success or failure of this lawsuit would turn on the following question: Are Plaintiffs, as salaried Case Managers, covered by the "professional" exemption to the FLSA's and PMWA's overtime pay mandate? Under the professional exemption, Defendant must demonstrate that the "primary duty" of the Case Manager position "is the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a)(2)(i); accord 34 Pa. Code § 231.84(1); see also 29 C.F.R. § 541.301(d) (defining "specialized intellectual instruction").

The parties disagree about whether the professional exemption applies to Defendant's Case Manager position. Plaintiff would try to analogize this case to (i) Solis v. Washington, 656 F.3d 1079 (9th Cir. 2011), wherein the Ninth Circuit held that a "Social Worker" position requiring a bachelor's degree in "fields as diverse as anthropology, education, criminal justice, and gerontology does not call for a 'course of specialized intellectual instruction'" was non-exempt; and (ii) Opinion Letter FLSA2005-50, wherein the U.S. Department of Labor's Wage and Hour Division opined that a "Caseworker" position that merely required a "bachelor's degree in the social sciences" was non-exempt. Defendant, however, would vigorously disagree, as reflected in the following passage from its Answer:

3

> the position of "CUA Case Manager" held by Plaintiff at Bethanna does indeed require specialized intellectual instruction. The position at issue draws on specialized academic training across multiple disciplines. Accordingly, Bethanna's CUA Case Managers must have at least a Bachelor's Degree in Social Work, Human Services, or a related field including sociology, psychology, counseling, criminal justice, education, divinity, or public health, plus three (3) years of relevant work experience. While not "required," a Master's Degree in Social Work, Human Services, or a related field is preferred by Bethanna and almost half of its CUA Case Managers, in fact, have Master Degrees. Moreover, before being assigned to manage cases, Bethanna's CUA Case Managers must receive a Charting the Course Certification ("CTC"). The CTC includes a series of child welfare-related curricula, which is mandated by DHS. The entire series results in 120 hours of in-classroom work and 6 hours of online work. Bethanna's Case Managers are required to maintain their CTC certifications with twenty (20) hours of ongoing training on an annual basis. By comparison, attorneys in Pennsylvania are only required to take twelve (12) hours of Continuing Legal Education (CLE) per year. Finally, this Court has specifically found that Case Managers of child welfare agencies have "specialized intellectual instruction" by possessing a Bachelor's Degree in social work, human services, or a related field plus three years of work experience. See Chatfield v. Children's Servs., Inc., 555 F. Supp. 2d 532, 537 (E.D. Pa. 2008).

Answer (Doc. 6) at ¶ 14.

Moreover, if Plaintiffs could establish liability, the parties would hotly dispute the extent to which Plaintiffs worked over 40 hours per week. Plaintiffs would be required to prove their overtime work hours "as a matter of just and reasonable inference." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1047 (2016); Martin v. Selker Brothers, Inc., 949 F.2d 1286, 1297 (3d Cir. 1991). And Defendant would present evidence in an attempt to demonstrate that Plaintiffs' time estimates are greatly exaggerated.

Finally, if Plaintiffs could establish liability, the parties would disagree over the methodology by which Plaintiffs' overtime wages should be calculated. Courts interpreting the FLSA disagree on the methodology to be applied when salaried

4

employees win FLSA misclassification lawsuits. Some courts award overtime based on an employer-friendly "half-time" method (a.k.a. "fluctuating workweek" method), while other courts favor an employee-friendly "time and one-half" method. See generally Jacob v. Duane Reade, Inc., 293 F.R.D. 578, 590-91 (S.D.N.Y. 2013) (citing competing authority). The Third Circuit has never addressed this issue. Meanwhile, under the PMWA, the Pennsylvania Superior Court recently endorsed the "time and one-half" method in a divided opinion. See Chevalier v. General Nutrition Centers, Inc., 177 A.3d 280 (Pa. Super. 2017). However, that opinion is on appeal and awaiting argument at the Supreme Court.

### D. Court Approval of FLSA Settlements.

Although the Third Circuit has not addressed the issue, this Court generally reviews FLSA settlements to ensure that they represent "'a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" Howard v. Philadelphia Housing Authority, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)). In this regard, an FLSA settlement will be approved if it: (1) resolves a *bona fide* dispute under the FLSA; (2) is "fair and reasonable for the employee(s);" and (3) "furthers the FLSA's implementation in the workplace." Id.

Judicial oversight of FLSA settlement serves important public policy goals. However, from the undersigned's perspective (and based on experience resolving hundreds of FLSA lawsuits on behalf of thousands of workers), the "over-scrutiny" of FLSA settlements presents its own problems. In particular, the FLSA's goals are *not* furthered when lawyers working on a contingency fee basis are required to spend

5

substantial attorney time papering and briefing the settlement of "low-value" FLSA lawsuits. Many individual FLSA lawsuits settle for less than $10,000, which means the lawyer's share of the settlement will only be a few thousand dollars. A time-consuming and overly-burdensome approval process discourages many capable contingency fee lawyers from taking on "low-value" FLSA cases. This is unfortunate, because these cases are extremely important to the individual workers (almost none of whom can afford to pay a lawyer on an hourly basis).[1]

In recent years, some district court judges have taken a more streamlined approach to individual FLSA settlements. For example, Your Honor and other judges have questioned the utility of applying the "Girsh factors" to individual FLSA settlements. See Mitchell v. People for People Charter School, Inc., 2018 U.S. Dist. LEXIS 72691, *5 (E.D. Pa. Apr. 27, 2018) (Pappert, J.); Nwogwugwu v. Spring Meadows at Lansdale, Inc., 2017 U.S. Dist. LEXIS 76669, *6 n. 2 (E.D. Pa. May 18, 2017) (Pappert, J.); Rubbo v. PeopleScout, Inc., 2017 U.S. Dist. LEXIS 72578, *5 N. 1 (E.D. Pa. May 11, 2017) (Pappert, J.). Other judges of this Court – even in FLSA collective actions – have been issuing especially short opinions. See, e.g., Teixeira v. Walters & Mason Retail, Inc., 2018 U.S. Dist. LEXIS 153837 (E.D. Pa. Sept. 6, 2018); Fried v. Ideal Concepts Inc., 2018 U.S. Dist. LEXIS 121416 (E.D. Pa. July 17, 2018); Carbonell v. RCL Management, LLC, 2018 U.S. Dist. LEXIS 104960 (E.D. Pa. June 21, 2018); Santos v. El Gallito Mexican Bakery II LLC, 2018 U.S. Dist. LEXIS 42363 (E.D. Pa. March 12, 2018). And

---

[1] Over the years, our law firm has handled many individual FLSA cases in which the "lodestar" value of the attorney time required to obtain judicial approval has exceeded the total value of the settlement. We can economically tolerate such scenarios because – knock on wood – fees recovered in our collective and class cases financially underwrite the individual cases. However, many smart and dedicated lawyers – especially those just getting starting with their plaintiffs-side law practices – do not have this luxury.

other judges have been willing to approve individual FLSA settlements based entirely on the representations of counsel during phone conferences.  See Appendix B (sample orders).

**E.  Court Approval is Warranted in this Case.**

Here, Court approval is warranted because, as discussed below, the settlement – which pays the four Plaintiffs a total of $35,000 free and clear of attorney's fees and expenses – satisfies each of the three approval criteria:

First, the settlement **resolves a *bona fide* dispute** under the FLSA.  As discussed, in Section C above, the parties genuinely dispute whether Plaintiffs are entitled to overtime pay under the "professional" exemption.

Second, the settlement is **"fair and reasonable"** for Plaintiffs.  In this regard, Plaintiffs wish to emphasize that: (a) each of them has individually signed the Agreement, see Doc. 15-1; (b) the settlement has resulted from arms-length bargaining between experienced counsel; (c) Defendant's liability under the professional exemption is hotly disputed, see Section C supra; (d) damages are hotly disputed, see id.; and (e) it is questionable whether Defendant could satisfy a substantial judgment if this lawsuit proceeded through discovery, motion practice, and trial, see Section B supra.  Moreover, based on a review of payroll data obtained from Defendant during discovery, the undersigned calculates that Plaintiffs' $35,000 payment equates to over 10 overtime hours per week under the "half-time" methodology endorsed by many courts awarding damages under the FLSA and over 3 overtime hours per week under the more employee-friendly "time and one-half" approach.  This is a very good result.  See, e.g., Guice v. DIRECTV, LLC, 2018 U.S. Dist. LEXIS 88585, *6 (E.D. Pa. May 24, 2018) (approving FLSA settlement that paid plaintiffs between 26.2" and 41% of their "'best

7

day' recovery").

Third, the settlement **"furthers the FLSA's implementation in the workplace."** Under this requirement, courts ensure that FLSA settlements do not contain overly-broad waiver language or require confidentiality. See Nwogwugwu, 2017 U.S. Dist. LEXIS 76669, at *8. Here, the release is narrowly-tailored to only include legal claims "either asserted in or reasonable related to [this] Action," Doc. 15-1 at ¶ 4, and has been publicly filed without any confidentiality provisions, see generally id.

Based on the above, the settlement's payment of $35,000 to Plaintiffs should be approved because it represents "'a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" Howard, 197 F. Supp. 3d 773, at 777 (quoting Lynn's Food Stores, Inc., 679 F.2d 1350, at 1354).

Finally, courts reviewing FLSA settlement must ensure that the **attorney's fees and expenses** paid to plaintiffs' counsel are reasonable. See Howard, , 197 F. Supp. 3d 773, at 780-81. Here, the settlement pays the undersigned firm $15,000. See Doc. 15-1 at ¶ 6. This total includes $14,565 in fees and $435 in documented expenses. The expenses are obviously reasonable – and understated – considering that the Court filing fee is $400. Moreover, the $14,565 fee constitutes only ***29.13%*** of the total $50,000 settlement fund, placing it below the percentage recovery commonly approved by this Court. See Fein v. Ditech Financial, LLC, 2017 U.S. Dist. LEXIS 158479, *34 (E.D. Pa. Sept. 27, 2017) ("courts often find a benchmark of one-third of the settlement fund appropriate"); see also Nwogwugwu, 2017 U.S. Dist. LEXIS 76669, at *7 (approving 35% fee); Lyons v. Gerhard's Inc., 2015 U.S. Dist. LEXIS 92348, *12-13 (E.D. Pa. July 16,

2015) (Pappert, J.) (approving 44% fee).[2]

**F. Conclusion.**

For all the above reasons, Plaintiffs request that the Court grant this motion and approve the settlement of this FLSA action.

Date: January 10, 2019

Respectfully,

/s/ Peter Winebrake
Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*For Plaintiffs*

---

[2] The undersigned counsel hereby represents that his firm's fee lodestar – utilizing the hourly rates described in the Philadelphia Community Legal Services fee schedule – *exceeds* the $14,565 recovered under the instant settlement. Contemporaneous timekeeping records can be immediately provided upon the Court's request.

9